Filed 12/6/24  P. v. Smith CA1/1
Opinion following rehearing
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>ERIK NORTON SMITH,<br><br>　　　　Defendant and Appellant. | A167639<br><br>(Mendocino County<br>Super. Ct. Nos. 22CR03052;<br>22CR00800) |

Erik Norton Smith pleaded no contest to carjacking and several other offenses.  The trial court placed him on probation for three years, subject to various terms and conditions.  On appeal, he contends the court erred in denying his application for mental health diversion, in imposing a probation condition that was unconstitutional, and in imposing $1,100 in fines without first determining his ability to pay.

We filed an opinion on October 11, 2024, remanding for reconsideration of the probation condition and otherwise affirming.  In affirming the judgment, we rejected Smith's claim that the trial court abused its discretion in denying his application for mental health diversion.  Smith's sole contention on that point was that the court erred in concluding he was ineligible for relief because he was too dangerous to be treated in the community.  We found some merit to the argument but nonetheless

1

concluded that any such error was harmless because the trial court cited the "insufficient" treatment plan as a basis for denying diversion, and the record revealed that no specific inpatient or outpatient program was recommended. (See Pen. Code,[1] § 1001.36, subd. (f)(1)(A)(i) [court must be satisfied that "the recommended inpatient or outpatient program of mental health treatment" met the defendant's specialized mental health needs].) We subsequently granted rehearing to address Smith's contention in his petition for rehearing that he satisfied section 1001.36, subdivision (f)(1)(A)(i) (hereafter section 1001.36(f)(1)(A)(i)). We now file this revised opinion adhering in almost all respects to our prior opinion, but discussing Smith's additional arguments and authority.

## I. BACKGROUND

### A. *The Offenses*

In March 2022, a police officer saw Smith on the freeway and told him to stay off it. Two weeks later, the officer again spotted Smith walking on the freeway. When the officer instructed Smith to come towards him, Smith ran away from him across the freeway lanes. The officer was able to detain Smith after he fell on the shoulder of the freeway.

Smith was charged with resisting or obstructing a peace officer (§ 148, subd. (a)(1)); disobeying a lawful order from a peace officer (Veh. Code, § 2800, subd. (a)); and pedestrian on a freeway (Veh. Code, § 21960, subd. (a)).

Approximately eight months later, Smith took the car of a 78-year-old woman while she was parked behind a store. The woman was sitting in the car when Smith approached the vehicle, opened the driver's side door, and said he needed a ride. She told him no and attempted to close the door.

---

[1] Undesignated statutory references are to the Penal Code.

2

Smith wedged "a metal object that she [thought] was a bat" between the door and the door frame to prevent it from closing. He then grabbed the woman's arm and pulled her out of the car. He pushed her down to the pavement and pressed the metal object into her stomach while he got into the car. The woman grabbed the metal object but he "pulled it so hard [she] lost [her] grip on it." He drove away, and the police were called.

One of the responding officers found the woman's car at an intersection and identified Smith as the driver. Smith was cooperative and admitted to taking the woman's car.

Smith was charged with carjacking (§ 215, subd. (a)) and driving on a suspended or revoked license (Veh. Code, § 14601.1, subd. (a)).

## B.     Smith's Request for Mental Health Diversion

In January 2023, Smith filed an application for mental health diversion pursuant to section 1001.36,[2] which allows for the postponement of prosecution so that a defendant can undergo mental health treatment. Smith asserted that he had been diagnosed with bipolar I disorder and substance use disorders. He argued that he was responding well to treatment while incarcerated, had a limited criminal history, and the record showed he did not use threats or weapons against the victim of his current offenses and was "cooperative and peaceful upon his arrest." Therefore, he contended, his mental disorders were treatable in the community, and he did not pose an unreasonable threat to public safety.

---

[2] After Smith applied for mental health diversion, the Legislature amended section 1001.36 twice. (Stats. 2023, ch. 235, § 1; Stats. 2023, ch. 687, § 1.1; Stats. 2023, ch. 687, § 1.2.) The substantive changes to section 1001.36 are not relevant to this appeal, and therefore we consider the current version of the statute.

3

Smith included a report in support of the application from Dr. Veronica Sanchez Varela, who conducted a psychological evaluation of Smith. Dr. Sanchez Varela diagnosed Smith with bipolar I disorder, methamphetamine use disorder, and alcohol use disorder. She opined that his mental disorders were a significant factor in the commission of his offenses. She noted Smith's long history of untreated mental illness and substance abuse and that he admitted to "consistent use" of methamphetamine during the past two years.

Dr. Sanchez Varela further opined that Smith's conditions were treatable. Smith reported to her that he did not use substances during his detention and that he started taking psychiatric medication, which Dr. Sanchez Varela concluded was "likely contributing to improved cognitive, affective, and behavioral stability and judgment." She recommended a "comprehensive approach" to Smith's mental health treatment that would include medication management, therapy, and sobriety support. She said this would mean frequent meetings with a psychiatrist and a therapist "who can regularly assess his symptoms and assist Mr. Smith with interventions to regulate mood, test his reality, and understand his mental illness, addiction, and need for life-long treatment," as well as sobriety support "in the form of a dual diagnosis program and/or sobriety support groups." She emphasized the need for such an approach "as [Smith] would be most vulnerable to substance use relapse if he felt the need to self-medicate mental illness symptoms that overwhelm him."

In his application, Smith acknowledged that he did not have the mental health treatment plan required by section 1001.36(f)(1)(A)(i), claiming that incarcerated individuals are " 'blacked out' " from Medi-Cal benefits until they are released. He said his counsel was knowledgeable about the local agencies that provided mental health services and could propose a treatment

4

plan based on Dr. Sanchez Varela's recommendations and available services. He also said he would agree to be monitored in behavioral health court on a weekly basis as a term of his diversion.

The trial court held a hearing on Smith's diversion application in February 2023. Defense counsel argued that Smith met the eligibility and suitability requirements for diversion. She further contended that Dr. Sanchez Varela provided a "general description" of what Smith's treatment plan should be and that "we would work on . . . putting the plan that . . . Dr. Sanchez Varela proposed in place." She said that if diversion was granted, they could "start getting his Medi[-]Cal turned back on" and get him to one of three agencies that provided medication management and therapy.

In response, the People contended that Smith had not met all the requirements for diversion in part because he posed an unreasonable risk of danger to the public. The People further argued that the defense had not presented an "inpatient or outpatient program of mental health treatment [that] will meet the specialized mental health treatment needs of this defendant," as required by section 1001.36(f)(1)(A)(i). "[T]hey say trust us, Judge, we'll get it together later."

After the parties submitted the matter, the trial court found that Smith was eligible for diversion because he had a qualifying mental health disorder that was a motivating factor in the commission of the offenses, and he would respond to mental health treatment. The court also concluded that Smith met the first three statutory criteria for determining whether a defendant is suitable for pretrial diversion.

Turning to the remaining statutory requirements, the trial court first noted the absence of any history of mental health treatment for Smith, stating, "I don't have anything to rely on in that regard as far as really

5

gauging whether or not the treatment plan proposed is suitable to meet his needs." The court further observed, "[W]e have a plan that is not really in place. [¶] We have some ideas or suggestions of how best to go about making sure that [Smith], if released, will have access to housing, treatment, and the comprehensive plan that is needed in a case such as this." The court also considered Smith's carjacking offense and the vulnerability of his victim in determining whether he posed an unreasonable risk of danger to the public safety if treated in the community.

The court ultimately denied Smith's application for diversion, citing the "insufficient" treatment plan and the circumstances of his carjacking offense.

## C. *Plea*

Following the trial court's denial of his diversion application, Smith pled no contest to all charges in the two cases. The court placed Smith on probation for three years subject to various terms and conditions, including that he serve 364 days in the county jail with a credit for time served of 102 days.

## II. DISCUSSION

## A. *Mental Health Diversion*

Smith contends the trial court abused its discretion by denying his application for mental health diversion. As explained below, any error was harmless.

### 1. Legal Standards

Under section 1001.36, a trial court may grant a defendant pretrial mental health diversion if the defendant has a qualifying mental health disorder. (*People v. Frahs* (2020) 9 Cal.5th 618, 626–627.) As defined in the statute, "pretrial diversion" means " 'postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the

6

point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment.' " (*Id.* at p. 626, quoting § 1001.36, subd. (c).)

Section 1001.36 gives courts discretion to grant pretrial diversion "if the defendant satisfies the eligibility requirements for pretrial diversion set forth in subdivision (b)" and the court finds "that the defendant is suitable for that diversion under the factors set forth in subdivision (c)." (*Id.*, subd. (a).)

Under section 1001.36, subdivision (b), a defendant is eligible for pretrial diversion if (1) the defendant has been diagnosed with a qualifying mental disorder; and (2) the defendant's mental disorder was a significant factor in the commission of the charged offense.

For any defendant who satisfies the above eligibility requirements, the court must then find the defendant is suitable for pretrial diversion if all the following criteria are met: "(1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment. [¶] (2) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . . [¶] (3) The defendant agrees to comply with treatment as a condition of diversion . . . . [¶] (4) The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(1)–(4).)

"Even if a defendant otherwise satisfies the six . . . requirements, the court must also be satisfied that the recommended mental health treatment program 'will meet the specialized mental health treatment needs of the defendant.' " (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1079; see § 1001.36, subd. (f)(1)(A)(i).) "Before approving a proposed treatment program, the court shall consider the request of the defense, the request of

7

the prosecution, the needs of the defendant, and the interests of the community." (§ 1001.36, subd. (f)(1)(A)(ii).)

We review a trial court's ruling on a petition for pretrial mental health diversion for abuse of discretion. (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147 (*Whitmill*); *People v. Moine* (2021) 62 Cal.App.5th 440, 448–449 (*Moine*).) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*Moine*, at p. 449.)

**2. Analysis**

In ruling on Smith's application for mental health diversion, the trial court initially said it was focusing on the fourth suitability requirement—the defendant will not pose an unreasonable risk of danger to public safety. (§ 1001.36, subd. (c)(4).) But the court also expressed concerns with the proposed treatment plan and whether it would meet Smith's needs. After considering the plan and the circumstances of Smith's carjacking offense, the court denied diversion "for failure to have a treatment plan that the Court feels eliminates [Smith's] danger to the community as well as the seriousness of the offense in this case." The court further commented that while it had granted diversion in other cases involving violence, the treatment plan in this case was "insufficient for this Court to exercise its discretion, as well as the nature of the offense, the vulnerability of the particular victim in this case."

Smith claims the trial court abused its discretion by concluding he was ineligible for relief because he was too dangerous to be treated in the community. He contends there was no substantial evidence that he was likely to commit a "super strike"—such as murder or attempted murder—if treated in the community. (See *Moine, supra*, 62 Cal.App.5th at pp. 449, 450

8

[explaining that § 1001.36's definition of "unreasonable risk of danger to public safety" means an unreasonable risk the defendant will commit a super strike]; § 667, subd. (e)(2)(C)(iv) [listing super strike offenses].) He further notes that trial courts cannot use their discretion to deny diversion based on a definition of public safety that differs from that in the statute. (See *Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 895–896 (*Sarmiento*).)

The People respond that because Smith, in the commission of his carjacking offense, "was willing to use a weapon [(i.e., the metal object)] against a particularly vulnerable victim" to prevent her from interfering with the carjacking, "it reasonably follows that he would have used a greater level of violence had she been capable of mounting a greater resistance." Thus, the People argue, it was reasonable to conclude that Smith might commit attempted murder if treated in the community.

Smith's contention regarding the public safety element is well taken. In his current offenses, he did not use a weapon. Although he pulled his victim out of her car and used the metal object to prevent her from getting off the ground, he did not inflict any physical injury beyond "some shoulder pain." When she grabbed the metal object, he pulled it away and drove from the scene. While it is possible that Smith will escalate to attempted murder if treated in the community, there is little in the record to suggest that he is *likely* to do so. (See *Whitmill, supra,* 86 Cal.App.5th at p. 1156 [that the defendant fired a gun into the air and threatened to kill his girlfriend did not constitute substantial evidence "support[ing] the trial court's finding that [he] posed an unreasonable risk of committing a super strike"]; *Moine, supra,* 62 Cal.App.5th at pp. 451, 444–445 [the circumstances of the defendant's offenses, including that he engaged in a fistfight with a patient in an urgent

9

care facility and threatened to shoot everyone in a different urgent care facility a year later, did "not support the trial court's implied finding that [he] was likely to commit a super strike offense"].) Notably, Smith has a limited criminal history, with one violent crime that he committed almost a decade before his current offenses.

However, even if the court erroneously concluded Smith was not suitable for diversion, any such error was harmless because there remained an additional unmet requirement. The court had to be satisfied that "the recommended inpatient or outpatient program of mental health treatment" met Smith's specialized mental health treatment needs. (§ 1001.36, subd. (f)(1)(A)(i); see *People v. Frahs*, *supra*, 9 Cal.5th at p. 627.)

Here, as the People pointed out at the hearing, no specific program— inpatient or outpatient—was recommended. Much less was a program recommended that addressed Smith's specialized needs, which at a minimum included, according to Dr. Sanchez Varela, frequent meetings with a therapist and a psychiatrist and sobriety support. The defense acknowledged only having a "general description of what [Smith's] plan should be." Although defense counsel said there were a few agencies that could provide Smith medication management and therapy services once he was enrolled in Medi-Cal, no further details were provided.

Because the trial court could not possibly be satisfied with such a vague and uncertain treatment plan, the result would be the same in the absence of any error Smith contends the court committed. Indeed, the court cited the "insufficien[cy]" of the treatment plan as one basis for denying diversion, though its reasoning is a bit unclear. (See *People v. Watts* (2022) 79 Cal.App.5th 830, 837 [insufficiency of case plan may serve as an independent basis for denying diversion].) Nonetheless, we can infer from

10

the court's comments that it found the plan insufficient in large part because there was no concrete plan for Smith's mental health treatment. In discussing Dr. Sanchez Varela's treatment recommendations, the court observed that a plan was "not really in place" and that it only had before it "some ideas or suggestions" for how best to ensure Smith received mental health treatment if released. Therefore, it is not " 'reasonably probable that a result more favorable' " to Smith would have been reached in the absence of the court's error. (See *People v. Hall* (2024) 99 Cal.App.5th 1116, 1126–1127 [standard for prejudice].)

In supplemental briefing requested by this court after granting Smith's petition for rehearing, Smith contends that *Sarmiento*, *supra*, 98 Cal.App.5th 882 stands for the proposition that section 1001.36(f)(1)(A)(i) is not an additional requirement for granting diversion. Relying on *Whitmill*, *supra*, 86 Cal.App.5th 1138, he further argues that Dr. Sanchez Varela's proposed treatment plan was sufficient to satisfy section 1001.36(f)(1)(A)(i). We disagree on both counts.

*Sarmiento* did not hold that section 1001.36(f)(1)(A)(i) was not a requirement for granting diversion. In that case, it was recommended that the defendant receive substance abuse treatment coupled with therapy and psychiatric medication to treat her posttraumatic stress disorder and major depressive disorder. (*Sarmiento, supra*, 98 Cal.App.5th at p. 889.) The trial court denied her mental health diversion motion in part because it concluded that her prior unsuccessful attempts at substance abuse treatment indicated that she would not respond to treatment. (*Id.* at pp. 890, 894.)

The Court of Appeal reversed, concluding that "the alleged failure of *prior* drug treatment programs says nothing about any inadequacy of the *proposed* plan to address [the defendant's] mental health needs." (*Sarmiento*,

11

*supra*, 98 Cal.App.5th at p. 895.) It explained, "[S]ubdivision (f)(1) of section 1001.36 does not create an additional eligibility or suitability requirement for the defendant. The focus of this provision is on the *program of treatment*, providing reasonable assurance that it will address the defendant's particular mental health needs. Under this provision, a court might reject diversion if it concluded that the proposed treatment services did not target or could not effectively address the defendant's particular diagnosis." (*Ibid.*) The *Sarmiento* court further noted that the proposed treatment services were "significantly different" from the defendant's prior substance abuse treatment. (*Ibid.*) It therefore concluded that there was no substantial evidence to support the trial court's conclusion that the recommended treatment program would not meet the defendant's specialized mental health treatment needs. (*Ibid.*)

As the dissent noted, the *Sarmiento* court did not address whether the defendant had met her burden under section 1001.36(f)(1)(A)(i) to identify a program that would address her mental health needs, as the court instead focused on the trial court's reliance on her recidivism. (*Sarmiento*, *supra*, 98 Cal.App.5th at pp. 906–907 (dis. opn. of Irion, J.); see *id.* at p. 906 [the defendant's "relapse-related recidivism was not the only reason the trial court was dissatisfied with the proposed treatment program, despite the majority's contrary suggestion"]; *id.* at p. 907 ["the lack of specificity in how, how long, where, and by whom [the defendant] would be treated—serious defects the majority ignores—support the trial court's conclusion [the defendant] did not meet her burden to present a plan that would meet her specialized mental health treatment needs"].) Likewise, the question of whether section 1001.36(f)(1)(A)(i) was satisfied was not at issue in *Whitmill*. (*Whitmill*, *supra*, 86 Cal.App.5th at pp. 1150–1156.) It is "axiomatic that a decision does

12

not stand for a proposition not considered by the court." (*People v. Barker* (2004) 34 Cal.4th 345, 354.)

In any event, *Sarmiento* and *Whitmill* are distinguishable. In *Sarmiento*, the defendant had been approved for a county-funded residential substance abuse treatment program, and defense counsel provided specifics regarding the defendant's treatment plan at the hearing on her diversion motion. (*Sarmiento, supra*, 98 Cal.App.5th at pp. 888–889.) " 'The only thing [counsel] d[id]n't know [was] where the [psychiatric] services [would] occur.' " (*Id.* at p. 889, fn. 2.) In *Whitmill*, the defendant previously received substance use treatment at the Veteran's Administration, and a liaison from the Veteran's Administration informed the trial court that it would work with the defendant to facilitate a treatment plan that met the defendant's needs, which included therapy and substance abuse treatment. (*Whitmill, supra*, 86 Cal.App.5th at p. 1145.) Thus, the trial court in those cases received at least some assurance that a program was available that could meet most of (if not all) the defendant's mental health needs.

In contrast, here, Smith's diversion application identified the three agencies in Ukiah Valley that provided therapy and medication services, but it said nothing about the availability or frequency of those services, the type of therapy the agencies offered, and whether they could provide sobriety support. While Smith's counsel noted that Smith was " 'blacked out' " from Medi-Cal benefits because he was incarcerated, and thus he could not register for services until he was released, she said she would propose a treatment plan based on her knowledge about the agencies, the available services, and Dr. Sanchez Varela's recommendations, yet no such proposal appears in the record. At the hearing on Smith's diversion application, counsel suggested that "intensive outpatient at SUDT" and behavioral health

13

court "be part of [Smith's] plan," but she again provided no details other than that behavioral health court would occur every Friday. The prosecution responded that he had "a veto of violent people participating in" behavioral health court, and he would exercise that veto in this case. Accordingly, nothing assured the court that Smith would be provided mental health services sufficient to meet his specialized needs.

Contrary to Smith's assertion, the fact that Dr. Sanchez Varela identified his mental health needs was insufficient to satisfy his burden under section 1001.36(f)(1)(A)(i), because it was only one part of his burden. He was also required to identify an outpatient or inpatient program that would meet his specialized mental health needs. (§ 1001.36. subd. (f)(1)(A)(i); see *People v. Gerson, supra*, 80 Cal.App.5th at pp. 1078–1079 [the defendant has the burden of making a prima facie showing that he or she meets § 1001.36's requirements].) As we have explained, he failed to do so.

While we sympathize with Smith's struggle with mental illness, we are satisfied that the trial court did not abuse its discretion in denying his application for mental health diversion because he did not meet his burden under section 1001.36(f)(1)(A)(i) to identify a program that would address his specialized mental health needs. Even if the court erred in its reasoning, as Smith appears to suggest, we must affirm if the ruling is correct on any ground. (*People v. Zamudio* (2008) 43 Cal.4th 327, 351, fn. 11.)

### B. *Probation Condition*

Smith argues that a probation condition requiring him to cooperate " 'with evidence-based practices as directed by [his] probation officer' " is unconstitutionally vague, overbroad, and an impermissible delegation of judicial authority. As a condition of probation, the trial court checked a prewritten box for condition No. 44, ordering Smith to "cooperate fully with

evidence-based practices as directed by your Probation Officer, (GEO Reentry Services, workbooks, GPS monitoring) and remain working constructively within that program until completion or agreed upon timeframe." The problem with this term, Smith contends, is that it does not specify the "rehabilitative activities" that are necessary, thus giving the probation officer the kind of unfettered discretion that courts have determined is unconstitutional. He further argues that the phrase "evidence-based practices" does not adequately inform him of what is required of him. The People agree that the condition is vague and suggest that we modify it to delete the phrase "evidence-based practices."

The law is clear that " 'a probation condition "must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated," if it is to withstand a [constitutional] challenge on the ground of vagueness.' " (*People v. Mendez* (2013) 221 Cal.App.4th 1167, 1172.)

Moreover, a court cannot delegate its exercise of discretion to probation officers. (*In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1372.) The authority to "impose and require" reasonable conditions of probation "for the reformation and rehabilitation of the probationer" rests with the trial court, "as it may determine are fitting and proper." (§ 1203.1, subd. (j).) While a "court may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation," "the court's order cannot be entirely open-ended. It is for the court to determine the nature of the prohibition placed on a defendant as a condition of probation." (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1358–1359.) Thus, a court may delegate to probation the authority to select a specific program of the type the court has determined is necessary for the defendant's

15

rehabilitation (*People v. Penoli* (1996) 46 Cal.App.4th 298, 301, 307–308, disagreed with on another ground by *People v. Torres* (1997) 52 Cal.App.4th 771, 777–778), but it cannot delegate the authority to determine in the first instance which conditions are "fitting and proper" to serve the goals of reformation and rehabilitation. (§ 1203.1, subd. (j).)

"Generally, we review the court's imposition of a probation condition for an abuse of discretion. [Citations.] However, we review constitutional challenges to a probation condition de novo." (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

We agree with the parties that the probation condition is unconstitutionally vague because "evidence-based practices" is a broad term, and it is not clear whether the condition's parenthetical list of such practices is a partial one. Thus, in its present form, the condition could be interpreted to require Smith to participate in other unidentified, evidence-based practices. It therefore does not provide him adequate notice of what is required of him.

However, instead of modifying the probation condition on appeal, as the People urge us to do, we will remand the matter to the trial court for reconsideration. This is because the condition does not specify the type, subject matter, or purposes of the activities and programs that require Smith's participation. The term "workbooks," for example, is vague and could encompass various activities across a broad range of subjects. Thus, the condition appears to leave to the probation officer unfettered discretion to determine the type and nature of programming that is "fitting and proper" for Smith's rehabilitation. (§ 1203.1, subd. (j).) As it is unclear from the record whether the court believed there was some specific issue that should be addressed by participation in particular programming, we will remand to

16

allow the court to exercise its discretion. (See *People v. Cervantes* (1984) 154 Cal.App.3d 353, 361 [setting aside improper probation condition and remanding to trial court for exercise of discretion], superseded by statute on other grounds as stated in *People v. DiMora* (1992) 10 Cal.App.4th 1545, 1549.)

## C. *Ability to Pay Fines*

The probation department recommended that Smith be required to pay a $1,500 restitution fine (§ 1202.4, subd. (b)), a $1,500 probation revocation restitution fine (§ 1202.44), a $41 criminal offense fine (§ 1202.5), a $1,556 fine under Vehicle Code section 14601.1, subdivision (a), a security fee of $80 (§ 1465.8, subd. (a)(1)), and a criminal conviction assessment fee of $60 (Gov. Code, § 70373). At the sentencing hearing, defense counsel asked the trial court "not to impose . . . the 1556 fine for [Vehicle Code section] 14601. . . . [¶] . . . . [I]t's a lot of money for someone who has at this point nowhere to live, some significant health problems that might be a barrier to finding a job immediately, and so I would ask to give—he is indeed indigent, and so I would ask for some relief on the fees and fines."

The trial court imposed the statutory minimum of $300 for the restitution fine, the statutory minimum of $500 under Vehicle Code section 14601.1, subdivision (a), and a $300 probation revocation restitution fine, staying the latter, and it struck the security fee, the criminal conviction assessment fee, and the criminal offense fine "based on an inability to pay."

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Smith contends the court violated his constitutional rights in imposing the fines without first determining his ability to pay them. We agree with the People that Smith forfeited this argument.

17

*Dueñas* involved a challenge to the assessments and restitution fine raised by "an indigent and homeless mother of young children" who was unable to work because of her cerebral palsy. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1160.) She lost her driver's license when she could not pay assessments for juvenile citations she received as a teenager. (*Id.* at p. 1161.) She was then convicted of several misdemeanors for continuing to drive without a license, and she remained unable to pay off her debt. (*Ibid.*) In her most recent case, she was placed on probation and ordered to pay the assessments and restitution fine within three years. (*Id.* at p. 1163.) She sought and was granted a hearing on her ability to pay attorney fees, but the trial court determined that the assessments were mandatory and that she had not shown the " 'compelling and extraordinary reasons' " required by statute to waive her restitution fine. (*Ibid.*)

Against this background, *Dueñas* held that "due process of law requires [a] trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments." (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.) It further held that although "section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the [fine] over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid.*)[3]

---

[3] The issues of whether a trial court is required to consider a defendant's ability to pay before imposing or executing fines, fees, and assessments and which party bears the burden of proof regarding the defendant's ability to pay are pending before our state Supreme Court.

18

In this case, however, Smith did not ask for an ability to pay hearing, nor did he assert that he would be unable to pay any fines or fees. Instead, he urged the court to grant him "some" relief, and he specifically asked the court not to impose the fine under Vehicle Code section 14601.1 in the amount recommended by probation. The court granted substantial relief, striking three of the fines and fees and significantly reducing the remaining fines from the amounts recommended by probation. That the court struck some fines and fees based on Smith's inability to pay does not mean the court necessarily determined that he could not pay any fines or fees. (See *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397 [noting that "a defendant may lack the 'ability to pay' the costs of court-appointed counsel yet have the 'ability to pay' a restitution fine"].)

On this record, Smith has forfeited his challenge under *Dueñas*. (See *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1053–1054 [defendants forfeited *Dueñas* challenge where they did not object to the fines and fees imposed against them and did not request an ability to pay hearing]; *People v. Castellano* (2019) 33 Cal.App.5th 485, 490 ["a defendant must in the first instance contest in the trial court his or her ability to pay"]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154 (*Frandsen*) ["Given that the defendant is in the best position to know whether he has the ability to pay, it is incumbent on him to object to the fine and demonstrate why it should not be imposed."].) Had his ability to pay the fines actually been an issue, Smith could have sought an ability to pay hearing and made a record in the trial court. (See *Frandsen*, at p. 1154.) Although Smith contends the court

_____

(*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

19

already had evidence before it of his inability to pay, he does not cite any evidence; he cites only attorney argument.[4]

Smith contends his claim of error is cognizable on appeal because the trial court's imposition of the fines is an error of law. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 889, 880–881 [constitutional objection to imposition of probation condition forfeited unless it presents " ' "pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court" ' "].) This contention lacks merit because a defendant's ability to pay is a factual determination, rather than a pure question of law. (*Frandsen*, *supra*, 33 Cal.App.5th at p. 1153.) Moreover, the burden rests with the defendant to demonstrate his or her inability to pay the fines and fees in question. (*People v. Castellano*, *supra*, 33 Cal.App.5th at p. 490; *Frandsen*, at p. 1154.)

Nor would there be any merit to an ineffective assistance of counsel claim based on failure to ask for an ability to pay hearing or object to the fines imposed. Such claims are viable on appeal "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to

---

[4] In its response brief, the People cite to a Judicial Council form entitled "Defendant's Statement of Assets" that Smith submitted to the trial court. (Capitalization omitted.) The form shows that his take-home pay was $1,200 every two weeks, that he owns two vehicles, one worth $2,500 and one worth $1,500, and that he has no debt other than child support arrearages. In the section regarding child support, the form instructed the defendant to attach copies of orders and statements, but Smith failed to do so. This evidence does not establish that Smith had no future ability to pay $1,100 in fines and, in fact, indicates that he may have had a present ability to pay the fines. (See *People v. Cowan* (2020) 47 Cal.App.5th 32, 49 [evaluation of a defendant's ability to pay must include his or her future ability to pay], review granted June 17, 2020, S261952.)

provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Here, the record is silent as to why defense counsel raised no objection to the imposition of the fines based on Smith's ability to pay. It is possible that Smith did have the ability to pay some fines and fees and that counsel therefore had a "rational tactical purpose" in asking for "some" relief. Indeed, as previously mentioned, the People cite evidence indicating that Smith could pay the fines imposed against him. Thus, it is inappropriate to decide his ineffective assistance of counsel claim on direct appeal.

## III.   DISPOSITION

We reverse and remand with instructions to the trial court to either strike or modify condition No. 44 in the order of formal probation consistent with this opinion. In all other respects, the judgment is affirmed.

LANGHORNE WILSON, J.

WE CONCUR:

HUMES, P. J.

SIGGINS, J.[*]

A167639
*People v. Smith*

---

[*] Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.